UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| LEE A. MEEKS, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-2418-STA |
| | ) | |
| JOHN E. POTTER, | ) | |
| POSTMASTER GENERAL, | ) | |
| | ) | |
|        Defendant. | ) | |

___

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
___

Before the Court is Defendant John E. Potter's Motion to Dismiss or, in the Alternative, for Summary Judgment (D.E. # 35) filed on July 15, 2010.  Plaintiff Lee A. Meeks filed a Response in Opposition to the Motion (D.E. # 38) on August 23, 2010.  For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

Plaintiff Lee A. Meeks ("Plaintiff"), a former employee of the United States Postal Service  ("Defendant"), alleges that Defendant violated Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), when the Defendant terminated Plaintiff's employment on May 7, 2004.  Compl. ¶ 1, 5 & 9.  Plaintiff's specific allegations under Title VII are not clearly delineated in his Complaint; however, in Plaintiff's EEO Complaint of Discrimination related to this matter, Plaintiff alleged both retaliation and disability discrimination.  Def.'s Mot. Summ. J., Ex. 8.  Additionally, Defendant refers to Plaintiff's claim pursuant to the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended.  Def's Mot. Summ. J., 1.  From the face of Plaintiff's

1

Complaint, it does not appear that Plaintiff has alleged a claim pursuant to the Rehabilitation Act; however, the Court will address the claim below.

In January 1998, the Defendant hired Plaintiff as a clerk in the Defendant's Memphis Processing and Distribution Center.  Def's Statement of Undisputed Facts ¶ 1.  Plaintiff specifically states that Defendant hired Plaintiff "as a handicapped individual with a pre-existing medical condition of 'pes planus' or 'deformed feet' and a spinal condition he has had from birth."  Pl.'s Resp. to Def.'s Mot. Summ. J., 6.  In June 2000, Plaintiff suffered an on-the-job injury to his left ankle and foot and was subsequently placed on "limited duty."  (*Id.*)  In November 2000, the Defendant's physician released Plaintiff to return to full duty; yet, Plaintiff's treating physician continued his work restrictions.  (*Id.*)  From November 2000 to January 17, 2001, Plaintiff requested temporary light duty assignments, and Defendant assigned work consistent with the Plaintiff's medical condition.[1]  Def's Statement of Undisputed Facts ¶ 4.

Plaintiff filed an EEO complaint with the Postal Service in November 2000 and January 2001.  (*Id.* ¶ 5.)  In the November 2000 EEO complaint, Plaintiff alleged he was being harassed by Joe McClinton ("McClinton"), the Manager of Distribution Operations ("MDO") and Harry Mae Conway ("Conway"), his immediate supervisor.  (*Id.*)  In January 2001, Plaintiff added a retaliation claim to his EEO complaint.  (*Id.*)  According to the Plaintiff, he added the retaliation claim after Conway told Plaintiff that McClinton "did not think his work restrictions were clear" and proceeded to clock Plaintiff out herself.  Pl.'s Resp. to Def.'s Mot. Summ. J., 7.  On

---

[1] Plaintiff does not dispute this fact in his Response to Defendant's Motion to Dismiss; however, in Plaintiff's own statement of facts, Plaintiff states he "was often given work assignments that were outside his known work restrictions."  Pl.'s Resp. to Def.'s Mot. to Dismiss, 7.

February 22, 2001, Plaintiff mediated the EEO claims involving Conway and McClinton.  Def's Statement of Undisputed Facts ¶ 6.  As a result of this mediation, the parties entered into a signed settlement agreement.  (*Id.*)

Defendant never returned Plaintiff back to working status.  After the settlement of his EEO complaint on February 22, 2001, Plaintiff states that he resubmitted his medical documentation with the understanding that he would be brought back to work.  Pl.'s Resp. to Def.'s Mot. Summ. J., 8.  He further states that in March 2001, Greta Bradfield with the Defendant's Human Resource office informed Plaintiff they did not have any work available for him.  (*Id.*)  From March 2001 to 2003, Plaintiff states that he made repeated calls to the Defendant's Human Resource office inquiring about his work status, and each time the Human Resource office informed Plaintiff there was no work available.  (*Id.*)  On March 12, 2003, Defendant issued Plaintiff a Notice of Removal; however, by April 16, 2003, the Notice had been rescinded "due to administrative error."  Decl. of Lee A. Meeks ¶ 13[2]

On December 30, 2003, the Defendant's Labor Specialist Joseph Pegues ("Pegues") prepared a letter notifying Plaintiff of a January 5, 2004 investigative interview in connection with his employment.  Def's Statement of Undisputed Facts ¶ 7.  Postal records indicate that on December 31, 2003, Special Letter Carrier Arthur Smith ("Smith") certified that he left the first class letter addressed to Plaintiff in the mailbox at 1075 N. Avalon, Memphis, TN 38107.  (*Id.*)  Arthur Smith, however, was unable to deliver the certified letter.[3]  (*Id.*)

---

[2] There are two paragraphs numbered "13" in the Declaration of Lee A. Meeks.  This is referring to the first number "13" paragraph.

[3] Plaintiff does not dispute this fact in his Response to Defendant's Motion to Dismiss; however, in the attached Declaration of Lee A. Meeks, Plaintiff states that from the end of December 2003 until the first of July 2004, neither he nor his wife received *any* mail or notices from the

On January 27, 2004, Pegues prepared a second letter notifying Plaintiff of a February 4, 2004 investigative interview in connection with his employment.  Def's Statement of Undisputed Facts ¶ 10.  According to postal records, Special Delivery Carrier Terry Thaxton certified that on January 28, 2004, at 11:48 a.m., he delivered the first class letter by leaving it in the mailbox at 1075 N. Avalon and that he attempted, but was unable, to hand-deliver the certified letter.  (*Id.*)

On March 29, 2004, Pegues prepared a Notice of Removal letter, dated March 29, 2004, to be sent via certified mail and first class mail to Lee Meeks at 1075 N. Avalon.  (*Id.* ¶ 11.)  This letter notified Lee Meeks that he would be removed from the U.S. Postal Service effective close of business on May 7, 2004.  (*Id.*)  Postal records reveal notices were left at 1075 N. Avalon by the postal carrier on three occasions, March 31, 2004, April 8, 2004, and April 18, 2004, informing Plaintiff that he needed to pick up the certified letter.  (*Id.*)  None of the first class letters were returned to the Labor Relations' office from which they were mailed.  (*Id.* ¶ 12.)

Plaintiff disputes ever receiving the first class letters delivered January 28, 2004 or March 31, 2004 or the notices of certified mail delivered on March 31, April 8, and April 18, 2004.  Pl.'s Resp. to Def.'s Mot. Summ. J., 4.  From 1994 to present, Plaintiff has lived, for the most part, at 1075 N. Avalon Street, Memphis, Tennessee 38107.  Def's Statement of Undisputed Facts ¶ 2.  Plaintiff, however, states that from December 2003 to July 2004 he did not reside at 1075 N. Avalon.  (*Id.*)

In fact, the Plaintiff states that on or about January 2, 2004, he had gone to Defendant's Human Resource office at 555 So. Third to add an additional address and update his contact

---

Defendant.  Decl. of Lee A. Meeks ¶ 16 (emphasis added).

information, since, at the time, he was not living at 1075 N. Avalon.[4]  Pl.'s Resp. to Def.'s Mot. Summ. J., 8.  Plaintiff states that he filled out a form to change his address.  Def's Statement of Undisputed Facts ¶ 2.  Plaintiff states that he did not receive a copy of the form.  (*Id.*)  Further, Plaintiff never received anything from the Defendant acknowledging the addition of the second address.  (*Id.*)

From December 2003 to July 2004, Plaintiff's wife, Ursula Patterson, occupied 1075 N. Avalon.  Pl.'s Resp. to Def.'s Mot. Summ. J., 4.  She states that during this time period, she checked the mail on a regular basis and does not recall receiving any mail or notices of attempt to deliver certified mail from the Postal Service addressed to Lee Meeks.  Decl. of Ursula Patterson ¶ 4.

Plaintiff claims that he did not actually learn of his May 7, 2004 removal until July 2, 2004, when he received a letter from his Thrift Savings Plan, mailed to him at 1075 N. Avalon.  Def's Statement of Undisputed Facts ¶ 13.  This letter stated that the Plaintiff was no longer employed with the Defendant.  (*Id.*)  Upon receipt of this letter, Plaintiff states that he contacted his union representative, Vanessa Brazel ("Brazel"), who advised him that before a grievance could be filed, they would need to verify that he had actually been removed.  Pl.'s Resp. to Def.'s Mot. Summ. J., 9.  According to Plaintiff, Brazel was unable to confirm Plaintiff's removal.  (*Id.*)   On or about the end of July 2004, Brazel advised Plaintiff that he should consider filing an EEO and that he should demand a copy of his removal notice.  (*Id.* at 9-10.)

---

[4] In a deposition, Mario Evans ("Evans") stated that he drove Plaintiff to 555 South Third in January of 2004.  Dep. of Mario Evans, 8:7-12 & 18-24.  When asked why Plaintiff needed a ride to 555 South Third, Evans stated that "[h]e just said that he needed to do a change of address."  (*Id.* at 9:13-16).

The Defendant states that at this point, July 2004, the Plaintiff claims that he went to the Defendant's EEO office located on Front Street and "an unknown, unidentified woman told him that he could not file an EEO complaint because more than 45 days had elapsed since his removal." Def's Statement of Undisputed Facts ¶ 14. The Plaintiff disputes the characterization of Defendant's statement. Pl.'s Resp. to Def.'s Mot. Summ. J., 4. Plaintiff states that while he does not remember the name of the woman with whom he spoke, he asserts that she was an EEO Specialist designated by the Defendant to handle EEO matters for that office. (*Id.*) The EEO officer told the Plaintiff that he could not file an EEO complaint because more than 45 days had elapsed since his removal.

After being informed of the 45-day statutory period, Plaintiff visited the EEOC website and verified the 45-day period for filing an EEO claim.[5] (*Id.* ¶ 14.) From the website, Plaintiff also learned that the "time limit [for filing an EEO complaint] could be extended if the employee could show that he or she was unaware." (*Id.*) The Defendant states that the Plaintiff made no further attempts to file an EEO complaint regarding his removal in 2004, 2005, or 2006. (*Id.*)

The Plaintiff disputes the last two sentences as being incomplete. Pl.'s Resp. to Def.'s Mot. Summ. J., 5. Plaintiff states that after researching the 45-day period on the website, on July 29, 2004, he went to the Human Resource office at 555 So. Third St. and asked for a copy of his Notice of Removal. (*Id.* at 10.) Plaintiff states that he received the copy of his Notice of Removal, and the copy was stamped "received on July 29, 2004." (*Id.*) After receiving this copy, Plaintiff went back to the EEO office on July 30, 2004 and spoke with the same woman he

---

[5] The Plaintiff does not dispute that at all times during Plaintiff's employment, EEO posters were on display at his facility explaining the time limits for contacting an EEO Counselor about a claim of discrimination. Def's Statement of Undisputed Facts ¶ 3.

had spoken with previously. (*Id.* at 10-11.) Plaintiff states he showed her the Notice of Removal indicating he had received it on July 29, 2004 and told her he had read that the 45-days could be extended if he could show that he had not received it until July 29, 2004. (*Id.*) Plaintiff asserts that she then dismissed him by saying that his removal was more than 45-days ago, and, thus, it was too late to file. (*Id.*) After being told that he could not file an EEO complaint, Plaintiff contacted his union representative again to pursue a grievance. (*Id.*) The union filed a grievance regarding his removal on August 9, 2004. (*Id.*) An Arbitrator denied Plaintiff's grievance in 2005 as unarbitrable on timeliness grounds. (*Id.*)

In February 2007, Plaintiff contacted his currently retained attorney, Jeffrey Atchley, to discuss this matter. Def's Statement of Undisputed Facts ¶ 19. Jeffrey Atchley advised Plaintiff that he was wrongly denied the right to file an EEO complaint in 2004. (*Id.*) Subsequently, on February 23, 2007, Plaintiff requested EEO counseling regarding his removal. (*Id.* ¶ 20.) Plaintiff's EEO Complaint of Discrimination alleged that McClinton, Conway, and George Whitten ("Whitten") were the officials responsible for the discriminatory actions taken against him.[6] (*Id.* ¶ 21.) Defendant asserts that Plaintiff's EEO allegations of discrimination include the same claims Plaintiff alleged against Conway and McClinton in his 2000 and 2001 EEO complaints, which were previously settled in mediation. (*Id.* ¶ 22.) Plaintiff disputes that assertion and states that in his pre-complaint counseling paperwork submitted on February 23, 2007, he was challenging his May 7, 2004 removal. Pl.'s Resp. to Def.'s Mot. Summ. J., 5.

Plaintiff's EEO complaint regarding his removal was dismissed as untimely in a final decision dated June 18, 2007. Def's Statement of Undisputed Facts ¶ 23. Plaintiff appealed the

---

[6] Plaintiff does not recall why he listed Whitten as a discriminating official in his 2007 EEO Complaint. Def's Statement of Undisputed Facts ¶ 21.

7

decision to the EEOC's Office of Federal Operations ("OFO"), and it affirmed the Agency's decision on September 25, 2007.  (*Id.* ¶ 24.)  Plaintiff requested reconsideration from OFO, and reconsideration was denied on April 3, 2007.  (*Id.* ¶ 25.)  From this denial, Plaintiff has now appealed to this Court.   (*Id.* ¶ 26.)

In its Motion for Summary Judgment, Defendant argues that Plaintiff failed to timely exhaust his EEO claims.  Specifically, Defendant asserts that since the statutory filing period related to Plaintiff's EEO complaint expired long before he filed his request for pre-complaint counseling on February 23, 2007, he is barred from litigating the claims related to his lawsuit.  Moreover, Defendant argues that doctrine of equitable tolling should not be applied in this case because of Plaintiff's unwarranted delay before seeking to pursue his EEO complaint.  Additionally, Defendant argues that Plaintiff's 2000 and 2001 claims are barred under the doctrine of accord and satisfaction due to the February 22, 2001 settlement agreement signed following mediation.  Defendant also asserts the settlement agreement serves as an accord and satisfaction as to any claims the Plaintiff may have related to harassment by Conway and McClinton and to his January 2001 release from his light duty assignment.  Finally, Defendant argues that Plaintiff's reliance upon inadmissible hearsay is insufficient as a matter of law.  Specifically, Defendant argues that Plaintiff must present more than argument or re-allegation of the claims set forth in his lawsuit.

The Plaintiff argues that he did timely initiate contact with the Defendant's EEO Office.  Specifically, Plaintiff states that he did initiate contact with the Defendant's EEO office within 45-days of becoming aware that he had been removed.  Plaintiff first learned about his removal on July 2, 2004, and he tried to file an EEO complaint by making two separate attempts in late

8

July 2004.  On each occasion, the employee or agent of Defendant in its EEO office, who was designated to handle such matters, rejected Plaintiff's attempts as untimely.  Moreover, with regard to Defendant's equitable tolling argument, Plaintiff argues that all of the Defendant's arguments as to the issue of equitable tolling are undermined by the simple fact that Plaintiff's reasonably diligent efforts to file his EEO complaint timely and satisfy his obligations were rejected by the Defendant's EEO office.  With regard to the Defendant's accord and satisfaction argument, Plaintiff states that it is clear that while Plaintiff may not be able to recover, or seek any remedy, for events occurring prior to February 22, 2001, the events and occurrences he relied upon in that claim would nevertheless be admissible in this action, to the extent they are found to be relevant and probative as to Plaintiff's claims of discrimination and retaliation in this case.  Furthermore, Plaintiff also asserts that Defendant's hearsay arguments should be rejected as all of the statements Defendant purports to challenge are admissible under one or more of the exceptions to the hearsay rule as provided in Rule 801.

## STANDARD OF REVIEW

As an initial matter, the Court must determine which standard of review should apply.  Defendant has styled its Motion as a Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment.  Defendant briefed both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56(c), the standards for a Motion to Dismiss and Motion for Summary Judgment respectively.  Furthermore, Defendant has attached documents outside of the pleadings to address this matter.  Based on these considerations, the Court is going to treat this Motion as a motion for summary judgment.

Federal Rule of Civil Procedure 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[7]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[8] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[9] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[10] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[11] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[12]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[13] In this Circuit, "this requires the nonmoving party

---

[7] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[9] *Celotex*, 477 U.S. at 324.

[10] *Matsushita*, 475 U.S. at 586.

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[12] *Id*. at 251-52 (1989).

[13] *Celotex*, 477 U.S. at 322.

to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[14]  Finally, the "judge may not make credibility determinations or weigh the evidence."[15]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[16]

## ANALYSIS

In Defendant's Motion for Summary Judgment and in Plaintiff's Response, the parties both briefed and focused primarily on the timeliness issue.  Neither party, however, briefed the merits of the actual claims alleged by the Plaintiff.  The Court will first take up the timeliness issue and will then discuss the Plaintiff's allegations pursuant to Title VII and the Rehabilitation Act.

If a federal employee claiming discrimination does not file a complaint with an EEO counselor within forty-five (45) days of the offense, regulations for federal employees require the agency as well as the district court to dismiss the complaint unless estoppel or equitable tolling applies.[17]  In his Complaint, Plaintiff states the date of the Defendant's discriminatory offense as May 7, 2004–the date Defendant terminated Plaintiff's employment.  Plaintiff did not file an EEO complaint until February 23, 2007.  Therefore, it is uncontroverted that Plaintiff filed his complaint well after the statutorily delineated 45-day period; however, Plaintiff does contend this time should be equitably tolled.

---

[14] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[15] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[16] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[17] *Leeds v. Potter*, 249 F. App'x 442, 446 (6th Cir. 2007); *see* 29 C.F.R. § 1614.105(a)(1).

Federal courts apply the equitable tolling doctrine sparingly.[18]  As such, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."[19]  Moreover, "absent compelling equitable considerations, a court should not extend limitations by even a single day."[20]

In the Sixth Circuit, courts are to consider the following five factors when determining whether to invoke the equitable tolling doctrine: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.[21]  These factors are not exhaustive, and the "propriety of equitable tolling must necessarily be determined on a case-by-case basis."[22]

In the case at bar, Plaintiff does not deny being aware of the 45-day filing period.  In fact, Plaintiff argues that he acted diligently in pursuing his rights.  He asserts that he did initiate contact with the Defendant's EEO office within 45 days of becoming aware that he had been removed.  Specifically, Plaintiff contends that he first learned of his removal on July 2, 2004 and that he tried to file an EEO complaint on two separate occasions in late July 2004.  He asserts that on each of these two occasions, the employee or agent of the Defendant in its EEO office rejected Plaintiff's attempts as untimely.  Consequently, Plaintiff argues that the facts establish

---

[18] *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000).

[19] *Graham-Humphreys*, 209 F.3d at 560-61.

[20] *Id.*

[21] *Id.*

[22] *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

that he did all he was required to do by the regulation and any adverse consequences to either party that resulted from the delay in filing must be borne by the Defendant.

The Defendant, on the other hand, argues this is not an appropriate case for equitable tolling.  The Defendant asserts Plaintiff did not lack notice or constructive knowledge of the EEO filing requirements.  Additionally, Defendant argues Plaintiff did not diligently pursue his rights.  Defendant states that, after Plaintiff visited the EEOC website in 2004, he made no further efforts to file an EEO complaint in 2004, 2005, or 2006, and, apparently, Plaintiff did not consult with an attorney about this matter until 2007.  Moreover, Defendant also contends that prejudice has resulted from Plaintiff's delay in filing his EEO complaint–citing the fact that some of the events underlying Plaintiff's claims stem from alleged discriminatory acts that occurred as far back as January 2001.  Consequently, Defendant argues that Plaintiff's delay was unwarranted and that Plaintiff should not be deemed forgiven based on the doctrine of equitable tolling.

Taking the facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff is not entitled to equitable tolling because he did not act with diligence in pursuing his rights. Plaintiff claims he did not receive notice of his May 7, 2004 removal until July 2, 2004.  Plaintiff claims that within 45 days of receiving that notice he initiated contact with the EEO office on two separate occasions.  He states that on both occasions he was not allowed to file an EEO. Plaintiff further states that the union filed a grievance regarding his removal on August 9, 2004. However, according to the record, from August 9, 2004 to February 23, 2007, when Plaintiff requested EEO counseling regarding his removal, Plaintiff made no attempt to pursue his rights.

Consequently, Plaintiff has not given the Court "compelling equitable considerations" for this delay in filing. Thus, the Court finds that equitable tolling is not appropriate in this case.

Even assuming the Court had found that Plaintiff's claim should be equitably tolled, the Court still finds that the Plaintiff has failed to make out a prima facie case under the claims alleged in his Complaint, i.e., claims under Title VII and the Rehabilitation Act.

Title VII forbids an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."[23]  Absent direct evidence of retaliation, as is the case here, the *McDonnell Douglas* burden-shifting framework governs claims of retaliation.[24]

To establish a prima facie case of Title VII retaliation, a plaintiff must prove that:

(1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.[25]

---

[23] 42 U.S.C. § 2000e-3(a).

[24] *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008).

[25] *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis omitted); *see also Singleton v. Select Specialty Hosp.-Lexington*, *Inc.*, Nos. 09-5235, 09-5492 (6th Cir. Aug. 2, 2010).

If the plaintiff establishes a prima facie case of retaliation, the burden then shifts to the defendant to articulate a legitimate reason for its employment action.[26] If the defendant then meets that burden, the plaintiff can prevail only by showing the articulated reason is false or pretextual.[27]

In the present case, taking the facts in the light most favorable to the Plaintiff, the Plaintiff has established that he engaged in activity protected by Title VII. The Plaintiff did file an EEO complaint in 2000 and 2001. Additionally, Plaintiff has established that Defendant knew Plaintiff engaged in protected activity via the fact that the claims underlying the 2000 and 2001 EEO complaint were mediated and settled. Furthermore, Plaintiff does establish that Defendant thereafter took adverse employment action against Plaintiff when Defendant terminated Plaintiff's employment on May 7, 2004. The Plaintiff, however, has not established a causal connection between his protected activity and the adverse employment action.

Despite Plaintiff's bare assertions and conclusory statements,[28] Plaintiff has not offered any evidence of a causal connection between his protected activity, the filing of the EEO complaint in 2000 and 2001, and the adverse employment action cited in Plaintiff's Complaint–the Defendant terminating Plaintiff's employment on May 7, 2004. Causation is found where the plaintiff "proffer[s] evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action."[29] Although no one factor is dispositive in

---

[26] *Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x. 424, 431 (6th Cir. 2007).

[27] *Id.*

[28] The Plaintiff states that the Defendant "cleverly manipulated their system to try and generate a future timeliness argument to keep me from challenging their action." Compl. ¶ 10.

[29] *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009) (*quoting Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

15

establishing a causal connection, evidence that defendant treated plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation.[30]  In the present case, Plaintiff has not offered any evidence of similarly situated employees.  Moreover, the amount of time between Plaintiff's protected activity and his termination does not support any inference of a causal connection.  And, ultimately, the Plaintiff has failed to furnish any evidence to show a causal link between the protected activity and the adverse employment action claimed.  Thus, the Court concludes that Plaintiff has not submitted a prima facie claim of retaliation under Title VII.

As to the disability discrimination claim, the Rehabilitation Act, not the Americans with Disabilities Act ("ADA"), constitutes the exclusive remedy for a federal employee alleging disability-based discrimination.[31]  Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."[32]

To establish a prima facie case of discrimination under the Rehabilitation Act, "a plaintiff must show that: 1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged

---

[30] *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

[31] *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007); *see also* 42 U.S.C. § 12111(5)(B)(i) (defining employers covered by the ADA, but excluding the United States or a corporation wholly owned by the U.S. government).

[32] 29 U.S.C. § 794(a).

solely by reason of his handicap."[33]  The Rehabilitation Act "permits an employer to make a decision *because of* a handicap if the handicap is not the *sole* reason for the decision."[34]  An employer makes an adverse employment decision "solely" because of its employee's disability when "the employer has no reason left to rely on to justify its decision *other* than the employee's disability."[35]

In this case, the Plaintiff has offered no evidence to establish that the Defendant's Notice of Removal on May 7, 2004 was due solely by reason of his handicap.  Additionally, the Plaintiff has offered no evidence to suggest he is "otherwise qualified" to perform the job requirements with or without reasonable accommodation.  Thus, the Court concludes that the Plaintiff has not submitted a prima facie case of disability discrimination under the Rehabilitation Act.

## CONCLUSION

For the reasons set forth above, Defendant John E. Potter's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson<br>
S. THOMAS ANDERSON<br>
UNITED STATES DISTRICT JUDGE<br><br>
Date: September 7th, 2010.

---

[33] *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (*quoting Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)).

[34] *Burns v. City of Columbus, Dep't of Public Safety*, 91 F.3d 836, 841-42 (6th Cir. 1996).

[35] *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 n.9 (6th Cir. 1996)); *see also Verkade v. U.S. Postal Service*, No. 09-1268 (6th Cir. May 27, 2010).